No. 21,740.

JOHN E. WAGNER, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF EDWARDS, *Appellee*.

MRS. MAYME D. WAGNER, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF EDWARDS, *Appellee*.            (CONSOLIDATED.)

SYLLABUS BY THE COURT.

DEFECTIVE HIGHWAY—*Injuries—Statutory Notice of Defect Required.* The liability of counties for injuries sustained by reason of defective bridges, culverts, and highways is statutory, and is not coextensive with the common-law liability for negligence. There can be recovery only when the chairman of the board of county commissioners had notice of the defect at least five days prior to the time the injury occurred (Gen. Stat. 1915, § 722), and the notice must be actual, as distinguished from constructive or imputed or implied.

Appeal from Edwards district court; ALBERT S. FOULKS, judge. Opinion filed November 9, 1918. Affirmed.

*F. Dumont Smith,* of Hutchinson, and *E. E. Glascock, of* Larned, for the appellants.

*W. E. Broadie,* county attorney, *Elrick C. Cole, William Osmond,* both of Great Bend, and *A. L. Moffat,* of Kinsley, for the appellee.

The opinion of the court was delivered by

BURCH, J.: .The plaintiffs sued the defendant in separate actions for damages for personal injuries sustained on account of a defect in a highway. The actions were tried together, but separate verdicts were returned, on which judgments were entered for the defendant. The plaintiffs appeal.

A culvert was placed in the highway by the county, through the agency of men employed for the purpose. The evidence for the plaintiffs was that the work was. negligently done, and a depression resulted which rendered the highway unsafe for travel. The chairman of the board of county commissioners was admittedly without notice of the defect until after the plaintiffs were injured. The sole question now material was raised by a request for an instruction that if the culvert were constructed and the highway were defective as stated, the county would be liable for resulting injuries regardless of notice.

The argument in support of the instruction, which was refused, is that a distinction founded on good reason should be drawn between defects in the highway created through the agency of the county, as in building a bridge, putting in a culvert, or repairing a road, and defects arising without active participation of the county, as by use, accident, action of the elements, and .the like. The conclusion is that with respect to defects of the first class the county should rest under the same liability as a city for negligent street work. The difficulty with this view is, that whatever ground may have existed for making the distinction, the legislature did not make it in the statute, which reads as follows:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert, or highway, may ·recover such damage from the county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided; that· is to say, such recovery may be from the county when such damage was caused by a defective bridge constructed wholly or partially by such

county, and when the chairman of the board of county commissioners of such county shall have had 'notice of such defects for at least five days prior to the time when such damage was sustained; and in other cases such recovery may be from the township, where the trustee of such township shall have had like notice of such defect." (Gen. Stat. 1915, § 722.)

Notice to the individual specified, for the specified length of time, is a condition precedent to liability, and to hold otherwise would be, not to interpret, but to emasculate the statute. In this instance the knowledge and participation of the chairman of the board was limited to contracting for the improvement. He had no notice in fact of the defect, and there must be notice to him or the county is not liable. Assuming that the workmen who installed the culvert should be held to notice of the defective condition of the highway arising from their negligence, they are not the persons designated in the statute; and the only means by which the statutory condition to liability might possibly be fulfilled would be to bind the chairman by imputed or implied or constructive notice. Under the uniform decisions of this court for so long a time that presumably the legislature has accepted them as correctly reflecting its intention, this cannot be done.

It is true that in the case of *Reading Township. v. Telfer*, 57 Kan. 798, 804, 48 Pac. 134, the court, speaking by Chief Justice Doster, said that the statute remedied a defect in the common law by bringing within the operation of the law of negligence a class of cases which had not theretofore been actionable, and declared as to counties and townships what had always been the law with respect to cities. The court, however, was discussing the subject of the burden of proof of contributory negligence, and not notice, it appearing in the case that the township trustee had actual knowledge of the defect in the road and contemplated repairing it.

The opinion in the Reading Township case was filed on March 6, 1897. On April 10 of the same year the case of *Murray v. Woodson County,* 58 Kan. 1, 48 Pac. 554, was decided. In the Woodson County case the subject of notice was material, and the court said, Chief Justice Doster writing the opinion:

"The statute charges the county with liability only where the chairman of the board has notice of the defect in question. This statute ex-

46—Kan.—3099.

cludes the idea of imputable or constructive notice. The case is unlike those cited by counsel for the plaintiff in error, in which a municipality is liable upon notice to its governing authorities in their corporate capacity." (p. 3.)

In the case of *Vickers v. Cloud County*, 59 Kan. 86, 89, 52 Pac. 73, the writer of the opinion spoke of the statutory withdrawal of immunity of counties from liability, and said they were placed on the same plane with private corporations and individuals, but in that case the subject of notice was not involved. An objection to the introduction of evidence under the petition was sustained. The petition alleged knowledge of the defects complained of, and the question was whether or not the county was liable to one who was injured while under the defective bridge and not traveling upon it.

In the case of *Hari v. Ohio Township*, 62 Kan. 315, 62 Pac. 1010, agitation of the subjects of the nature of the liability and the character of notice was put at rest by the following definitive declaration:

"Cases of constructive notice to the governing authorities of cities of defects in streets and sidewalks shed no light on the question. Municipal corporations are under a common-law obligation to respond in damages for injuries occasioned by such defects, and they are therefore chargeable with what the common law esteems as notice. *Quasi* corporations, such as townships, are liable only as made so by statute, and therefore the statutory kind of notice must be given." (p. 318.)

The petitions of the plaintiffs would have been fatally defective without proper allegations of statutory notice. (*Higman v. Quindaro Township*, 91 Kan. 673, 139 Pac. 403.) What the plaintiffs were required to allege they were required to prove, and the requested instruction would have relieved them from the consequences of failing to prove an indispensable element of their causes of action.

The judgments of the district court are affirmed.

OPINION DENYING A REHEARING.

(Filed December 7, 1918.)

The opinion of the court was delivered by

Burch, J.: In a petition for a rehearing it is said that it is apparent the court failed to grasp the controlling point in the case—agency; that this failure of comprehension is apparent from the court's statement in the opinion that the knowledge and participation of the chairman of the county board was limited to contracting for the improvement; that reading the opinion one would suppose the culvert was put in by a contractor; that the court made the error of assuming that the work was done by a contractor, when in fact it was done by an agent of the county; that the question was not one of a contractor doing work for the county; and that the county did the work through its agents and servants.

A comparison of this indictment of the opinion with the opinion itself inclines the court to the belief that counsel did not give the opinion the careful consideration which it deserved, before placing his views on file. The statement of facts in the opinion opens as follows (italics added): "A culvert was placed in the highway by the county *through the agency of men employed for the purpose.*" In stating the question for consideration, the court used the following language (italics added): "The sole question now material was raised by a request for an instruction that if the culvert *were constructed . . . as stated,* the county would be liable," etc. "As stated," referred, of course, to the only statement on the subject which had been made, namely, that the culvert was placed in the highway by the county, through the agency of men employed for the purpose. In the argumentative portion of the opinion it became necessary to refer to the agency through which the county acted in making the improvement, and the court said (italics added): "Assuming that the *workmen* who installed the culvert should be held to notice," etc.

In the petition for a rehearing stress is laid on the fact that the chairman of the board of county commissioners, W. E. Fravel, employed the men who installed the culvert, and gave them directions regarding the work. The fact was not mentioned anywhere in counsel's brief, or in his reply brief. The

court, however, noticed it, and expressly charged to Fravel the arrangement for the installation of the culvert, by stating what his participation in the matter was—contracting for the improvement. The court had no reason to doubt, and still has no reason to doubt, that if the workmen employed had been obliged to sue for their pay, they would have sued on a contract made with Fravel, representing the board.

The foregoing covers everything there is from which a "contractor" theory of the opinion, as opposed to the theory of "agency of men employed," could be manufactured, and demonstrates that what the court considered was installation of a culvert through the agency of workmen employed by the chairman of the county board, and nothing else.

The actions were commenced under the statute, and not outside of it. The statute requires actual notice to the chairman of the county board, and the petitions expressly alleged that the chairman of the board of county commissioners had actual notice of the defect in the highway more than five days before the accident occurred. Evidence was introduced on the subject. This evidence was not brought up for the following reason, stated in counsel's abstract (italics added):

"A portion of Dr. Steenson's evidence and that of other witnesses relating to the plaintiffs' claim of notice to the chairman of the defendants is omitted from this abstract for the reason that *the plaintiffs, at the close of the trial, waived all question of actual notice to the chairman of the board, and do not now claim that there was any actual notice to the chairman of the board.*"

The proposition on which counsel stood was presented by a request for an instruction to the jury which stated the facts and the law as claimed by him as follows (italics added):

"The jury are instructed that if they find from a preponderance of the evidence that the culvert in question was put in by the county and by men employed for that purpose by the defendants, and they further find that it was negligently put in so as to cause a depression in the road which was dangerous to travel, the county is liable for any injury caused by said defect, *regardless of the question of notice.*"

Opening the argument in his brief, counsel said (italics added):

"Our theory of the case was that the defendant board, having put this culvert in place negligently and defectively, it was liable for any injury caused thereby, *regardless of the question of statutory notice.*"

In the course of his argument counsel returned again and

Wagner v. Edwards County.

again to what he indicated was the crux of the case, that is, malfeasance by the county itself, which obviated necessity for notice, and authorities were cited to show that when a defect is the direct act of a municipality, as in the case of defective construction, the municipality is liable as a wrongdoer, irrespective of notice. Counsel's argument from this standpoint was briefly but accurately summarized, and was fully dealt with, in the opinion.

While by the statement in his abstract, by the requested instruction, and by the statement of the theory of the case in his brief, counsel waived or disregarded actual notice, notice, and statutory notice, he did not in his argument entirely relinquish hold on the subject of notice. For example, one statement in the brief was as follows:

"But where the county creates the obstruction or danger, it is chargeable with the notice of such defect from the time of the construction."

Authority was cited to show that in such cases notice is implied. The court did not overlook this subject. Assuming notice to the workmen who installed the culvert of the resulting defect in the highway, the court advanced reasons why the fact would not fulfill the requirements of the statute. Notice to the agents would be only constructive notice to the chairman of the board, who was in fact ignorant of the defect, and not actual notice.

The two general propositions—liability regardless of notice, and notice presumed, or implied, or, let us say, resulting from defective construction—were all that were advanced, and the court considered and decided the precise case and the entire case presented by the record and by counsel. Counsel is correct in saying that the court did not intentionally "evade so important and controlling a question" as agency. The court freely concedes that it did not have in mind any such law of agency as counsel appears to have in his mind—a subject which will be discussed presently; but counsel's statement that the court "absolutely and entirely ignored" the question is refuted by the plain language of the decision.

The petition for a rehearing contains some assertions regarding the law of principal and agent which it is proposed shall govern the case, which are so astonishing the court hesitates to print them in counsel's language; but because of repeated insistence in the petition on "plain terms," and a de-

mand to have the subject of agency "fairly considered and fully decided," the court will do so.

It will be remembered that when counsel prepared his abstract the statement already quoted was inserted, that the plaintiffs do not now claim there was any actual notice to the chairman of the board.  In the petition for a rehearing it is now said:

"Anything that that agent knew, Fravel knew. He did not know it constructively; it was not imputed to him; it was not implied. It is actual notice."

Again it is said:

"Starting with the premise that knowledge is notice, how can the court evade the agent's knowledge which is not imputed to the principal, which is not constructive notice to the principal, but is the knowledge of the principal himself as much so as though he had done the work with his own hands? . . .

"Certainly no authority in the world has ever held before that knowledge is constructive notice.  To hold in this case that the knowledge of the agent is only constructive notice to the principal, is to establish something absolutely new in the law of agency."

It is further said that it is hardly necessary to cite authorities on the subject of knowledge of and notice to an agent being knowledge of and notice to the principal, but some textbooks are cited.  They do no more than sustain the proposition that knowledge of and notice to an agent are, in contemplation of the law of principal and agent, knowledge of and notice to the principal.  Nobody disputes this rule, and it does not begin to reach this case.

Knowledge and notice are not always synonymous.  In what follows, and for the purpose of this case only, the term "information" will be used to embrace both knowledge and notice, just as an algebraic symbol might be used to designate a known quantity.

If the principal have information of a fact, it makes no difference what information his agent may have.  The information being the possession of the principal's own mind, the agent and his information are supernumerary, and the principal is bound by his own information.  It is only when the principal is in fact ignorant, or it does not appear that he has information, and the information is the possession of the agent's mind, that the rule stated comes into operation.  In such a case, the information of the agent is not in fact the information of the

principal, but the law imputes the information of the agent to the principal, and so binds the principal in respect to legal consequences in the same manner as if he were personally informed. The reason for the imputation is that the law presumes the agent has performed his duty to acquaint his principal with all material facts incident to the agency, and the principal will not be heard to say otherwise. The very essence of the presumption, however, is that the principal was in fact uninformed, because if he were not so the presumption would have no function to perform.

A principal's information is actual in just one case—when it is the possession of his own mind. Actual information may be express, when it does not depend on collateral inference or impose duty of further inquiry. Actual information may be implied, when the principal has at hand means of information which he can and ought to use. In all other cases involving want of actual information on the principal's part, but information on the part of his agent, the principal's information is constructive only, because it is merely imputed to him by legal inference or presumption.

The foregoing was the law when counsel prepared his abstract. It is the settled law of this state. Allowing for some lack of precision in nomenclature, it is the law everywhere. The latest carefully phrased expression of the rule may be found in 2 C. J. 859:

"Subject to the qualifications hereafter considered, it is a well settled general rule that a principal is affected with constructive knowledge, regardless of his actual knowledge, of all material facts of which his agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, although the agent does not in fact inform his principal thereof." (§ 542.)

According to the law of principal and agent, in order that a person may be legally bound by information possessed by another, the relation of principal and agent must exist between them; and in this state the liability of the principal to third persons is governed by rules of the common law. The liability of a county for injuries resulting from defective highways is, in this state, purely statutory. An agent employed, as in this case, to install a culvert, is not an agent of the person who is chairman of the board of county commissioners, although the chairman transact the business on behalf of the board. The

relation of principal and agent exists only between the employee and the corporate body. The statute under consideration does not recognize notice to the board. It recognizes nothing but notice to the chairman of the board, and it recognizes no notice to the chairman except actual notice. Constructive notice is unavailing. Because, as suggested, there is some confusion in terminology in the textbooks and decided cases, the court in its opinion and syllabus used all the expressions which may be placed in contradistinction to actual notice—imputed, or implied, or constructive notice. In this instance, the chairman of the board had no actual notice of the defect in the highway until after the accident occurred.

The result is that the statement in the petition for a rehearing, that anything the agent knew Fravel knew, and that Fravel's knowledge of what the agent knew was not constructive, or imputed, or implied, but was actual notice, is not true, either in fact or in law. To start with the premise that knowledge (of the agent) is notice (to Fravel), is to make a false start. To end with the conclusion that the agent's knowledge was the knowledge of the principal as if the principal had done the work with his own hands, is to end as might be expected from such a start, in fallacy.

In the petition for a rehearing it is said:

"Now, if the court at the time of writing this opinion, fully understood . . . that Fravel employed the men who did the defective work, will the court then go so far as to say that this constitutes an exception to all the rules of principal and agent? That while in every other case the knowledge of the agent would be the knowledge of the principal, that because Fravel himself did not do the work with his own hands, but employed and instructed the workmen who did it, that here is an exception to the general law of agency? That is the precise point that we wish to be decided clearly and openly, so that the bar may understand that this court has ingrafted upon the law of agency a new exception not found in the decisions of any other court or the law as declared by any text writer."

As shown above, the court understood perfectly the relation of Fravel to the work, and stated the relation in terms as strong as counsel states it. The opinion will presently be published to the world in the Kansas reports, and in the Pacific reporter, and so is quite "open." Its clearness the court is obliged to leave to the discriminating judgment of those who read it with care and with appreciative minds. By the decision the court did not ingraft any new principle on the law of agency,

and the court is quite confident the bar of the state will rest under no such delusion.

When the bill was introduced in the legislature which finally became the statute, the law of principal and agent was in full operation. It did not embrace liability of counties for defective road work done by agents employed by the county board. No such liability existed. When the legislature had finished its work, it had not brought the subject of such liability within the scope of the law of agency. While it is true that the county board must do highway work through the agency of others, the liability of a principal for the acts of his agent was not the basis of the statute. The legislature knew quite well how county boards must conduct their affairs, and passing by the subject of producing agency, it fixed its attention on *defects* in bridges, culverts, and highways. It then ignored altogether the rule of agency, that information on the part of the agent is imputed to the principal, and attached liability only in case a designated individual, the chairman of the board, have actual notice of the defect for a stated period. The law of agency remains just as it stood before the statute was enacted, and before the court's opinion was written.

The petition for a rehearing says this court has declared that the statute must be liberally interpreted. So it must. A new liability was created, without more, and much was left to construction and interpretation, in fitting the statute into the existing system of rights, remedies, and procedure; but the essential nature of the liability itself cannot be enlarged or changed by interpretation.

The petition for a rehearing anticipates serious consequences from a decision which does not apply to the liability created by the statute the peculiar principles of agency stated in the petition. The court is not responsible for the policy of the law, and cannot amend it because boards of county commissioners may sometimes employ incompetent or dishonest agents.

The petition for a rehearing says the court somewhat Jesuitically evaded the effect of the case of *Reading Township v. Telfer*, 57 Kan. 798, 48 Pac. 134. There is an old rule, only slightly junior to the frailty of expression in judicial writing, that the language of an opinion is to be considered as bearing on the subject under decision. Counsel violated this rule, in

order to bolster up a theory of liability which was repudiated by the court twenty years ago. The court corrected him, and gave no further attention to the Reading Township case, because it could throw no helpful light on the matter under decision.

The petition for a rehearing says the case of *Tepfer v. City of Wichita,* 90 Kan. 718, 136 Pac. 317, was cited in plaintiffs' brief, because the principle now contended for, that knowledge of an agent is knowledge of his principal, was there upheld. The court did not refer to the Tepfer case at all. It was a city case. The liability of cities is common-law liability, and the court had occasion to quote from the opinions in two of its own cases differentiating the statutory liability of counties and the common-law liability of cities.

In the brief for the board of county commissioners the following concession was made:

"It is doubtless the law, that if the chairman of the board of county commissioners of Edwards county, Kansas, had personally installed the culvert in a defective manner, and an accident occurred by reason of such defective installation, no further notice would be necessary to him."

The court did not refer to the concession for several reasons. It did not establish the law, but was merely evidence of the law. If the concession stated the law, it was irrelevant to this case, because Fravel did not install the culvert, and the court performed its full duty when it decided the case before it. Besides this, the court hesitates to acknowledge, offhand, the existence of a principle which would apparently make the county generally liable if the chairman of the county board should do road or bridge work in such a way as to produce, at some subsequent time, a dangerous defect in the highway. There may be room here for one more lawsuit, and the court prefers to maintain strict neutrality until the question is regularly presented and argued.

The court believes that further discussion of the petition for a rehearing would not be profitable, and this opinion will now be brought to a close with this observation: It is not apparent why the district court did not close the case and instruct a verdict for the defendant when the plaintiffs abandoned actual notice to the chairman of the county board as a feature of their causes of action.

The petition for a rehearing is denied.