88   293|
a90   216|

88   293|
93   3δ1|

88   293
f95   219

88   293|
105   148|

NELLIE F. HURLEY *vs.* INHABITANTS OF BOWDOINHAM.

Sagadahoc.    Opinion January 10, 1896.

*Way.   Towns.   Notice.   R. S., c. 18, § 80.*

The words "actual notice" in the statute, (R. S., c. 18, § 80) relating to actions for the recovery of damages sustained by defects in highways, signify something more than an opportunity to acquire notice by the exercise of due care and diligence.

Evidence that a highway surveyor negligently disregarded a general complaint that all the culverts in his district were in bad condition has no tendency to prove that he had actual notice of a particular defect in one of them.

The facts and circumstances in a given case may justify the conclusion that he must have had actual notice unless grossly inattentive; but proof of gross inattention is not proof of actual notice.

A defective culvert was covered with planks about two feet in length laid lengthwise of the road; and the plaintiff's horse broke through the plank in the horse-path between the wheel-ruts.    It appeared that this plank was so decayed that a piece eight or nine inches long was broken out of the middle of it by the horse's foot, leaving the two ends still attached to the stringers; but at the time of the injury it was covered with earth to the depth of two inches.    *Held;* that the plaintiff failed to prove that the municipal officers or highway surveyors of the town had twenty-four hours' actual notice of the defect which caused the injury.

A statement to the selectmen that there wasn't "a safe culvert" on the road where the accident happened, without special mention of the culvert in question is not sufficiently definite and specific.    Neither can a statement to the highway surveyor that "all the culverts were in bad condition and needed repair" be deemed actual notice of the identical defect which may be the cause of an accident.

*Bragg* v. *Bangor*, 51 Maine, 534; *Smyth* v. *Bangor*, 72 Maine, 249; *Rogers* v. *Shirley*, 74 Maine, 144, affirmed.

ON EXCEPTIONS.

This was an action on the case, under R. S., c. 18, for injuries from an alleged defect in a culvert.

The defendants did not controvert the evidence tending to prove that the selectmen, or highway surveyor, had actual notice of the alleged defect; but seasonably requested the court to instruct the jury that the evidence offered was insufficient to establish the element of twenty-four hours' actual notice.

The defendants also contended that one Simeon E. Tarr was

not a highway surveyor competent to bind the town by receiving notice at the time claimed in the evidence, and seasonably requested the court to so rule.

The defendants excepted to so much of the charge as relates to the allegations and element of twenty-four hours' actual notice by or to the selectmen or highway surveyor as follows :

"I instruct you that Mr. Tarr, under this testimony may be regarded by you as highway surveyor for that district upon the 15th day of May, when he was repairing that culvert, with sufficient official authority to receive notice of the actual condition of the culvert which should bind the town. And I instruct you further, if you believe the testimony as to what was said to Mr. Tarr about the condition of that culvert on the 15th of May, I think that you would be authorized to find that he did then have actual notice of the actual condition of the culvert. And, to cover the whole case upon that point, I will also instruct you that if you believe the testimony of the witnesses who stated that they gave notice to the selectmen as to the condition of all the culverts upon that way and if you find as a fact that this culvert was rotten and defective, then you would be authorized upon that testimony to regard the selectmen as having actual notice of the actual defective condition of the culvert, sufficient to meet the provisions of the statute which require them to have such notice before the plaintiff can recover."

*Weston Thompson*, for plaintiff.

The defendants are here objecting that the case lacks proof of notice to their officers of defects which they and the same officers were bound to find without notice, and repair, at the peril of indictment and fine. R. S., c. 18, §§ 52, 88.

This requirement of notice is less exacting than it would be if the statutes not bearing on the civil action, did not lay upon the defendants the duty of ascertaining defects without waiting for notice. Any information which fairly puts the officers upon inquiry and enables them with reasonable search to find the defect, should be sufficient. Behind the statute granting the civil action is a principle of natural equity which is the reason

for the enactment ; a principle that finds expression in the common law definition of a tort.

Here we have the plaintiff's hurt and the defendants' neglect of legal duty as its sole and proximate cause ; all the natural justice that warrants any action of tort.

Although "town officers" are not usually town agents, the road officers are by statute made agents for the town in their relation to this plaintiff; because the town is liable criminally for their neglect, (R. S., c. 18, §§ 52, 88,) and because the town may be estopped by their conduct, when through them, "the defendant" has made repairs. R. S., c. 18, § 81. *Hayden* v. *Attleborough*, 7 Gray, 338, 340, 345 ; *Gilpatrick* v. *Biddeford*, 51 Maine, 182. These suggestions apply with peculiar force to a case where the defect is merely rottenness, the inevitable result of time and weather on such materials as the town saw fit to use in building the culvert ; the injury happening so long after the last repair as to make the rottenness a reasonable and even necessary inference from the time and the neglect.

The plaintiff has undertaken to prove "notice" to the municipal officers and also to the road surveyor ; but it is enough if she has succeeded in showing notice to either.

"Notice" in the statute, means knowledge, whether acquired by representations from other persons, or by personal inspection, or otherwise. This is the fair interpretation of the section, and it has been so understood by the court. The notice required is not necessarily one to be "served." *Holmes* v. *Paris*, 75 Maine, 559, shows this, and also shows the agency for the town of road officers in cases of this kind.

Eastman appeared May 11, 1894, and "told them . . . that the road was in very bad condition ; that there wasn't a safe culvert between my house and Richmond, not safe to travel over." As plaintiff was not hurt till the thirtieth this notice was seasonable. It was sufficiently specific. It did not say the whole road to Richmond was defective. It specified the bad places, the culverts ; including the one at which plaintiff was hurt. Any man could easily have found those culverts, includ-

ing the one in this case. from that notice only. The notice was not bad because it included other bad culverts, as well as the one here concerned. *Rogers* v. *Shirley*, 74 Maine, 144.

It was not open to the parties in this case to try the question whether other culverts within Eastman's complaint were as he represented them. The evidence indicates that his statements to those officers were in all respects and as to all the culverts, true ; for the defendants called Small, who says he built all the culverts at the same time and of the same kind of material and all had stood without repairs for six years. If one of them had become rotten at both ends and in the middle by time and weather only, it is fair to infer in default of countervailing evidence, that the others were in the same condition.

The municipal officers disregarded Eastman's notice. If they had examined one of the culverts and found it sound, they might possibly have been excused afterwards for treating the notice as unreliable. If they had examined the culvert where plaintiff was hurt, and (as we think) if they had examined any culvert, they would have found that Eastman's assertions were true.

A town and its officers disregard such a notice from a respectable citizen at their peril. *Shauer* v. *Alterton*, 151 U. S., 607. Surely it cannot help the defense to show that this long neglected road had been the subject of much complaint before. Hemlock lumber had stood in these culverts as long as it would last.

It is immaterial whether Eastman spoke from knowledge, from information, from inference, from conjecture, or from a purpose to deceive. He did not state his complaint as inference or hearsay, but as of his own knowledge. He asserted the defect as a fact. Until after plaintiff was hurt, the officers had no reason to doubt (so far as appears) that Eastman spoke from his own senses and spoke truth, as to every culvert within the terms of his assertion. They had a notice which should have put them on prompt inspection ; they had no reason to doubt that it was true, and it was true. It would repeal the statute to allow the town to escape by testimony that its officers

did not examine the way for six years and (without cause for skepticism) disbelieved the assertions of respectable citizens who told them the truth. The jury were not bound to believe that the selectmen disbelieved.

*H. M. Heath and C. L. Andrews*, for. defendants.

SITTING: WALTON, FOSTER, HASKELL, WHITEHOUSE, WISWELL, JJ.

WHITEHOUSE, J. The plaintiff recovered a verdict of eight hundred and seventy-five dollars against the defendant town for a personal injury sustained by her May 30, 1894, by reason of a defective culvert in the highway.

The defendants contend that the plaintiff failed to comply with the requirement of the statute (R. S., c. 18, § 80) which makes it incumbent upon the sufferer to prove as a. condition precedent to the maintenance of the action, that the " municipal officers, highway surveyors or road commissioners of such town, had twenty-four hours' actual notice of the defect or want of repair ;" and the case comes to the law court on exceptions to the ruling of the presiding justice upon this point.

The culvert in question was eighteen and one-half feet long, measuring from one side of the road to the other, twenty-four inches wide over all, and fifteen inches between the stringers, with a depth of sixteen inches. It was constructed in 1888, of sound hemlock plank two and a half inches thick. Two planks were set on edge lengthwise of the culvert and across the highway, and covered with planks about two feet long nailed across the culvert and lengthwise of the road. At this point there was a single well-defined traveled way, two wheel-ruts and the horse-path, and within the limits of the traveled way the culvert was covered with earth to the depth of about two inches, the top of it being substantially level with the grade of the road.

On the 30th of May, 1894, the plaintiff accepted an invitation to ride from Richmond to Bowdoinham, and when the horse stepped on the culvert in question, he broke through the short plank in the horse-path between the two wheel-ruts, and

the plaintiff was thrown violently to the ground receiving the injury of which she complains. It appears that this plank was so decayed that a piece eight or nine inches long was broken out of the middle of it by the horse's foot, leaving the two ends still attached to the stringers.

There was no claim that this culvert had ever been examined or repaired by any municipal officer or highway surveyor prior to the 15th of May preceding the accident on the 30th of the same month. But it was contended that, on the 15th of May, 1894, the highway surveyor had actual notice of the defect both from personal observation and from a conversation with Carleton Meserve; and furthermore that the selectmen all had actual notice of the defect from information given them "about the middle" of the same month by Thomas A. Eastman.

Respecting the alleged notice to the highway surveyor, on the 15th of May, these facts are disclosed: The acting surveyor, Mr. Tarr, was notified by his son that a plank was off of the culvert in the wheel-track. He promptly examined the culvert and found that the plank in the westerly wheel-track, which was originally sawed a little too short, had been thrown out of position. In the place of this he supplied a new plank which he carried with him. He testified that the old one was sound enough to be "safe for anything to pass over;" that he cut into the plank next to it, and found it "quite sound;" that he looked underneath the culvert and it looked well; that he had never been informed by anybody that there was a rotten plank in the horse track, or a rotten plank in any part of the culvert, and that he had no knowledge of any such defective condition. But while he was thus engaged in repairing the westerly end, Mr. Meserve drove along in his carriage, and in conversation remarked that the "culverts were in bad condition and needed repair; that they all needed repair." He did not specify any particular culvert. He admits that he had no knowledge of the actual condition of the defective plank in question and made no reference to it; and that his statement to the surveyor was simply the expression of an opinion that in view of the age of

the culverts it would be advisable to have them examined and repaired.

The alleged notice to the selectmen rests wholly on the complaint made to them in their office "about the middle of May," 1894, by Thomas A. Eastman. He said: "I told them that we expected them to do more work on our road this year; that the road was in very bad condition, that there wasn't a safe culvert between my house and Richmond — not safe to travel over." The culvert in question was between Eastman's house and the Richmond line; but he made no special mention of this particular culvert in that interview. He admits indeed that prior to the accident he had no knowledge of the existence of this culvert. It was substantially covered with dirt, and the top being level with the road, he had never noticed it. Nor had he ever been informed of any defect in this culvert. He admits that he only made a general complaint that the road was bad; that knowing that some of the culverts were bad, he expressed the opinion that all were. He admits that he did not communicate to the selectmen any information in regard to any part of this culvert.

But for the purposes of the trial, the presiding judge gave the jury the following instruction upon this branch of the case: "If you believe the testimony as to what was said to Mr. Tarr about the condition of that culvert, on the 15th of May, I think that you would be authorized to find that he did then have actual notice of the actual condition of the culvert. And to cover the whole case upon that point, I will also instruct you, that if you believe the testimony of the witnesses who stated that they gave notice to the selectmen as to the condition of all the culverts upon that way, and if you find as a fact that this culvert was rotten and defective then you would be authorized upon that testimony to regard the selectmen as having actual notice of the actual defective condition of the culvert, sufficient to meet the provisions of the statute which require them to have such notice before the plaintiff can recover."

We are unable to concur in this construction of the statute as applied to the facts of this case. It is not in harmony either

with the obvious purpose, or the natural import of the terms, of the amendatory act of 1877, and is at variance with the previous decisions of this court respecting this statute and that which preceded it.

In *Bragg* v. *Bangor*, 51 Maine, 534, the question involved was whether the town had "reasonable notice of the defect," as required by the former statute. In the opinion the court say: "It is notice of the defect that is required. The question then is, what is notice of an existing fact? . . . . Reasonable notice is such notice as gives information to the town officers or some of the inhabitants, of the actual condition of the road. . . These words mean something more than that a town might have had notice by diligence and care, or ought to have taken notice. . . . . . Notice of a fact implies knowledge of the existence of the fact, brought home to the party to be charged, either by his own observation or by declarations made to him by those who have seen or know it."

But by the amendment of 1877, (R. S., c. 18, § 80,) the legislature manifestly designed to prescribe a more definite requirement respecting notice and impose a more rigorous limitation upon the traveler's right to recover for an injury received. In accordance with this view the court say in *Smyth* v. *Bangor*, 72 Maine, 249 : "Since the passage of the act of 1877 no recovery can be had against a town or city for an injury received through a defect in one of its highways unless some one of its municipal officers, or highway surveyors, or road commissioners, had twenty-four hours' actual notice of the defect. And the notice must be of the defect itself, of the identical defect which caused the injury. Notice of another defect or of the existence of a cause likely to produce a defect is not sufficient." So also, in *Rogers* v. *Shirley*, 74 Maine, 144, the court say: "The call now is for twenty-four hours' actual notice . . . of the defect or want of repair which is the cause of the accident, provable as in other cases where actual notice is required, by circumstances showing personal knowledge on the part of the party to be notified, or information conveyed to him by others of the existing facts. Nor can one be said to have actual notice

of such a thing as this statute has referred to, until both the character and, approximately, the location upon the face of the earth, of that which constitutes the defect is in some way made known to him."

In the case at bar, it has been seen that Meserve gave no specific information to the highway surveyor of the identical defect which caused the injury, nor did Eastman give the selectmen any definite information respecting the defect in question ; for the simple reason that in each instance neither Meserve nor Eastman had any such information to give. It is plain that neither the selectmen, nor the highway surveyor, acquired from these sources of information any actual notice of the particular defect which was the cause of the accident. The statements of Meserve and Eastman were not sufficiently definite and specific to fulfill the more exacting requirements of the present statute.

But inasmuch as actual notice is a conclusion of fact which may be established by all grades of competent evidence, circumstantial as well as direct, it is still insisted that if he had not been grossly inattentive to his duty the highway surveyor would have derived actual notice, and that he ought to be deemed to have had actual notice of the defective condition of the plank in question, from the personal examination and inspection made by him at the time of repairing the other defect at the westerly end of the culvert. The surveyor, however, in his testimony, expressly denies that he ever in fact had any personal knowledge of the rotten condition of the plank in the horse-path ; and there is no direct evidence that he ever did have any such knowledge. It only appears that he might have acquired personal knowledge of the actual condition of all parts of the culvert, if he had made a more careful and thorough examination of it on the occasion mentioned ; but as already intimated, the words actual notice in this statute signify something more than an opportunity to obtain notice by the exercise of due care and diligence. Evidence that a highway surveyor negli-. gently disregarded a general complaint that all the culverts in his district were in bad condition has no tendency to prove that

he had actual notice of a particular defect in one of them. The facts and circumstances in a given case may justify the conclusion that he must have had actual notice unless grossly inattentive ; but proof of gross inattention is not proof of actual notice.

*Exceptions sustained.*