GULF, MOBILE AND OHIO RAILROAD COMPANY, A Corporation, Appellant,

v.

T. A. THORNTON, Appellee (two cases).

Nos. 16577, 16578.

United States Court of Appeals Eighth Circuit.

Aug. 30, 1961.

Rehearing Denied Sept. 22, 1961.

Alphonso H. Voorhees, St. Louis, Mo., for appellant; Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., on the brief.

Branham Rendlen, Hannibal, Mo., for appellee; Rendlen & Rendlen, Hannibal, Mo., C. M. Hulen, Sr., and Hulen & Hulen, Moberly, Mo., on the brief.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

BECK, District Judge.

These two diversity cases, consolidated for purpose of trial and appeal, arose out of a train-car collision at a railroad crossing on September 11, 1958, at 7:30 a. m., with appellee's wife as the driver of the car and his two minor sons passengers.

Both sons died as a result of injuries received in the accident, which in turn led to the commencement of the actions, trial, $10,000 jury verdicts in each, judgments entered accordingly and these appeals.

Relief from those judgments by reversals or in the alternative new trials are predicated on the following assigned errors: (1) that the court erred in overruling the defendant's motions for directed verdicts; (2) in instructing the jury:

"\* \* \* that if you find and believe from the evidence that the place where the accident occurred was a crossing over the defendant's railroad tracks and that said crossing was used by persons and vehicles as a crossing over said tracks to go to and from the farms, buildings and properties lying south of the railroad tracks in question, and if you further find that said crossing had been so used for a long period of time and

that the defendant knew of such existence and use of said crossing and had maintained and repaired said crossing from time to time and prior to the collision in question, then you are instructed that it was the duty of the defendant to warn persons approaching the crossing of the approach of its trains by ringing a bell or by sounding a horn or whistle at a distance of at least eighty rods (1320 feet or a quarter of a mile) from the said crossing and to keep ringing such bell continuously or sounding such horn or whistle at intervals until the locomotive of the train shall have crossed such crossing and you are further instructed that the failure of the defendant to so ring the bell if so, or so sound a horn or whistle if so, would, under those conditions, be negligence".,

and (3) [1] in instructing:

"Now if you find and believe from the evidence that the crossing in question was not so used and maintained, that is as the Court has previously instructed you as to its use by various persons going to the farms and to the buildings and so on, that it did not have this particular type of use then the duty of the defendant to warn of the approach of a train only arose when the operator thereof saw or by the exercise of ordinary care could have seen such automobile approaching and in a position of danger of being struck by the train unless a warning was given and at the time when the automobile could have avoided the collision upon becoming aware of the train through such warning, and under the circumstances that failure to warn would be negligence."

Appellant's first contention under (1) points to the evidence as not being sufficient to show the crossing where the accident happened to have been so frequently used as to require the appellant

---

1. (1), (2) and (3) are the assignment of errors in appellant's brief numbered I, II and III.

to comply with the Missouri Warning Statute "and sound a whistle or bell a distance of eighty rods from the crossing", and its second, that the evidence was insufficient to show that appellant had breached any duty toward a "non-use crossing".

Seemingly we note, neither one of these contentions advances any entertained theory, that warning signals need not be given under the Missouri law as a train approaches a crossing of the kind and type referred to in the trial court's instruction (hereinafter referred to as a user-crossing), *but rather that such a "user-crossing" under the evidence did not exist and that the evidence warranted such a conclusion as a matter of law.*

As these motions were made, the trial court had before it a record showing: (1) the crash scene at a point where the appellant's double railroad tracks along the southerly side of the community of Yates, in Randolph County, Missouri, crosses a north and south gravel road which to the north leads into the main street of that community and to the south connects with the appellee's home and farm; (2) the existence of the crossing for forty-eight years; (3) the appellant's maintenance and repair of it for a period, almost equally as long; (4) the established facts of its use by the appellee's family, two others, their visitors, operators of stock trucks, pipe line property people, any others who wanted to use the crossing and the road; and (5) in the rather obvious inference from all of the evidence that the appellant had knowledge of the extent of its use and did not regard it as a private crossing.

Relied on as in conflict therewith or as being in support of the appellant's contentions, is the fact that there was a gate at the crossing which could be used to close the road and was used for that purpose when appellee's livestock was in the pasture south of the appel-

lant's right-of-way; that the families south of appellee's farm had sold their property and were not living there at the time of the accident; that the new owner had an outlet to the county road to the west; that there were no whistle posts at the crossing; and as for the pipe line peoples' use of the road the appellee's testimony:

"Q. All right. Now, you had given them an easement across your property? A. I never give them no easement.

"Q. There is an easement across your property which was given by somebody, some owner of this property. A. Maybe so, but I never give it.

"Q. I'm asking you. A. As far as I know there is, I'm not really positive about that, but I never looked into it.

"Q. You gave that pipe line company permission to go through your land to work on its pipes? A. Well, I don't know whether you'd call it that or not. I understand they went through there, in fact, I'm sure they went through there before I moved to that place. I gave them permission when they were reasonable about it, when they were unreasonable to where I couldn't bear it, I asked them not to. I just asked them not to do it.",

and fireman Nidiffer's testimony:

"Q. And you were familiar with the fact that vehicular and pedestrian traffic used that crossing, weren't you? A. Well, I hardly ever seen one go over it, not myself.

"Q. You have seen them though, haven't you? A. Oh, I may have, yes."

Also in this connection it is admitted that the crossing was not a public crossing as defined in Missouri Statute, Section 389.990.[2]

2. "A bell shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled pub-

lic road or street, and be kept ringing until it shall have crossed such road or street, or a horn or whistle shall be attached to such engine and be sounded at

Detailing the evidence on this point as we have and aided as we are by certain general and well established rules, which obtain where insufficiency of evidence is assigned as reasons for motions to direct and thereafter, as errors on appeal, we readily agree that the evidence as a whole and the inferences fairly deducible therefrom warranted the trial court in denying the motions and holding the "user-crossing" question as one of fact for the jury. Railway Express Agency v. Mackay, 8 Cir., 1950, 181 F.2d 257, 19 A.L.R.2d 1248; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Mattson v. Central Electric & Gas Co., 8 Cir., 1949, 174 F.2d 215; Traders & General Ins. Co. v. Powell, 8 Cir., 1949, 177 F.2d 660; and Hartford Fire Ins. Co. v. Thompson, 8 Cir., 1949, 175 F.2d 10. See also Greene v. Werven, 8 Cir., 1960, 275 F.2d 134 and the reference thereto in that part of the opinion in Coca Cola Bottling Company of Black Hills v. Hubbard, 8 Cir., 1953, 203 F.2d 859, 860, which notes aspects of this rule and circumstances when it is to be applied:

> "In considering the question of the sufficiency of the evidence to support the verdict, there are several general rules to be kept in mind. (1) All of the facts which the plaintiff's evidence reasonably tends to prove must be assumed to have been established, and all inferences fairly deducible from such facts must be drawn in his favor. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 377, 122 A.L.R. 987; and cases cited. (2) It is only where the evidence is all on one side or so overwhelmingly on one side as to leave no doubt what the fact is that the court should direct a verdict. People's Savings Bank v. Bates, 120 U.S. 556, 562, 7 S.Ct. 679, 30 L.Ed. 754; Gunning v. Cooley, supra, at page 94 of 281 U.S., at page 233 of 50 S.Ct.; Egan Chevrolet Co. v. Bruner, supra, at page 377 of 102 F.2d. (3) The question of negligence is usually one of fact for the jury, and it is only where the evidence, even though it be uncontradicted, is such that all reasonable men must draw the same conclusion from it that the question of negligence becomes one of law for the court. Sears, Roebuck & Co. v. Peterson, 8 Cir., 76 F.2d 243, 248 and cases cited; Egan Chevrolet Co. v. Bruner, supra, at page 377 of 102 F.2d; Northern Liquid Gas Co. v. Hildreth, 8 Cir., 180 F.2d 330, 334–335. (4) Where inconsistent inferences reasonably may be drawn from the evidence, it is for the jury to determine which of the inferences shall be drawn. Turner County, S. D. v. Miller, 8 Cir., 170 F.2d 820, 827. (5) When the sufficiency of the evidence to make a case for the jury presents a doubtful question of local law, this Court will accept the views of the trial court unless convinced of error. Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Turner County, S. D. v. Miller, supra, at page 826 of 170 F.2d; Northern Liquid Gas Co. v. Hildreth, supra, at page 336 of 180 F.2d; Buder v. Becker, 8 Cir., 185 F.2d 311, 315. (6) The

---

least eighty rods from the place where the railroad shall cross any such road or street, except in cities, and be sounded at intervals until it shall have crossed such road or street, under a penalty of twenty dollars for every neglect of the provisions of this section, to be paid by the corporation owning the railroad, to be sued for by the prosecuting or circuit attorney of the proper circuit, within ten days after such penalty was incurred, one-half thereof to go to the informer and the other half to the county; and said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing when such bell shall be rung or such horn or whistle sounded as required by this section; provided, however, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such horn or whistle was not the cause of such injury."

burden of demonstrating error is upon the appellant. Turner County, S. D. v. Miller, supra, at page 828 of 170 F.2d."

■ We reach like conclusion as to appellant's contention that the evidence was insufficient to show a breach of duty "toward a non-use crossing", first, because the non-use aspect was rejected by the verdicts for the appellee and secondly, because all of the evidence on that point consisting as it did of testimony of one witness that the usual public crossing warning was sounded, that of four that there was none and of two, called by the appellant, who couldn't remember, raised a credibility issue only, which also was resolved against the appellant by those verdicts. Cases, supra, and Elzig v. Gudwangen, 8 Cir., 1937, 91 F.2d 434.

■ Appellant's only argument to support its allegation of error assigned in (2) is its statement in its brief:

"Our argument and reasoning as to this point are identical with those given under point I–A of this brief, and we adopt our entire argument under that point and respectfully refer the Court to that argument for our reasons for contending that the trial Court erred in submitting the question of user to the jury when the evidence was insufficient to warrant such a submission."

That argument having been rejected as not sufficient to support error assigned as (1) must also be given insufficiency status as it is sought to apply it to the one assigned as (2). Restricted as it is to the question of the existence of the "user-crossing" and the appellant's breach of duty at a "non-use crossing", it does not present anything not raised, argued and determined as we ruled on all of the contentions under (1). It is no more than an attempt at a rehearing on an issue already resolved. It is a confession, so to speak, that (2) is a repetition of (1), nothing more, and that the appellant's contentions under (1) are the only ones it has to submit for (2), and its effect, as a matter of law, is a waiver of any and all other arguments appellant could have submitted but didn't. Turner County, S. D. v. Miller, supra and Kimball Laundry Co. v. United States, 8 Cir., 1948, 166 F.2d 856, 859, where it was said:

"An unargued assertion of error is no more helpful to an appellate court than is an unsupported allegation of fact to a trial court. *The burden of demonstrating error is upon an appellant, and errors assigned, but not argued in his brief, are waived.*" (Italics ours.)

Under such a record, we are warranted in not going beyond the argument and in holding the case to have been properly submitted under the complained of instruction referred to (2). We shall, nevertheless, look to the Missouri cases for the reasons which led the trial court to instruct as it did.

Implicit, in this instruction, is the trial court's theory that the appellant's knowledge of the existence of the crossing, how it was used and the extent, were questions of fact for the jury to be decided in accordance with common law rules of negligence, with the warning signals specified in Section 389.990 RSMo 1949, V.A.M.S., and used in the instruction, being regarded only as a minimum common law requirement, Hackett v. Wabash Railroad Company, Mo.1954, 271 S. W.2d 573. We agree that the Missouri cases point in that direction and that there are no decisions in that state which specifically and conclusively hold otherwise.

Hackett, involving an accident at a public road crossing, adopts that viewpoint as it approves an instruction to the effect, that it was the duty of the defendant railroad and its engineer to give timely and adequate warning as the train approached the crossing and that a failure to do so constituted negligence, *if under the evidence they found the crossing to have been used by persons and vehicles and if they in the exercise of ordinary care should have anticipated that persons or vehicles might be on or crossing the tracks at the time.*

Salisbury v. Quincy, O. & K. C. R. Co., Mo.App.1924, 268 S.W. 896, 899, another railroad crossing accident case at a crossing, less frequently used than here or in Hackett, adopts the same rule:

"There was substantial testimony tending to show that prior to the collision the crossing had been used more or less continuously by persons in the vicinity. This evidence, together with the showing, that the crossing had been maintained by defendant for many years, we think was sufficient to take the case to the jury on the question of user. If the jury found that proper user was shown, then the defendant was not entitled to anticipate a clear track at that point, and the rules with respect to warning signals and proper outlook would apply".

Other solid support for the instruction is in Boland v. St. Louis-San Francisco Ry. Co., Mo.Sup.1926, 284 S.W. 141, 145, as the court in that case qualifies its observation of statutory signals not applying to a private crossing by adding:

"A railroad is bound to exercise reasonable care in the operation of its train and to avoid injury to persons and animals *at all crossings*, private as well as public; and if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen, ordinary prudence would require an alarm or a signal to be given by an approaching train, then its omission is negligence. The question is one for the jury to determine on common law principles," (Italics ours.)

and in Dickerson v. Terminal Railroad Ass'n of St. Louis, Mo.Sup.1955, 284 S. W.2d 568, 571, where it is pointed out that there is *"a common law duty to use reasonable care to avoid injury at all crossings, public or private"*, by warnings or otherwise, citing Boland, even as it held the Missouri statute requiring warnings at public crossings not to apply and the situation quite different from those involving private crossings established merely for the benefit of landowners. (Italics ours.)

Gainsaying pronouncements, are not in English v. Wabash Ry. Co., 1937, 341 Mo. 550, 108 S.W.2d 51; Flint v. Chicago, B. & Q. R. Co., 1947, 357 Mo. 215, 207 S.W.2d 474; Bryant v. Missouri Pac. Ry. Co., 181 Mo.App. 189, 168 S.W. 228, in Fowler v. Missouri, K. & T. R. Co., 229 Mo.App. 561, 84 S.W.2d 194, or in any other of the authorities relied on by the appellant. English, a private crossing accident case, pointedly makes it clear that the results might have been different but for "absence of known frequent public use". [341 Mo. 550, 108 S.W.2d 58.] Flint, we observe, was reversed and remanded for purpose of submitting certain issues to a jury, including a ruling that the "evidence was sufficient to make a jury issue on public use of this crossing sufficient to impose a common law duty to warn under the circumstances of this case" [357 Mo. 215, 207 S.W.2d 479], and the other authorities referred to we find limited to common law warning duty requirements at crossings, strictly private, and substance for the court's instruction is found in the general rule, 74 C.J.S. Railroads § 736, pages 1369–1370:

"Under some decisions a specific common-law duty to give warning or notice of the approach of trains or cars to a crossing has been recognized, and the failure to give a proper signal or warning held to constitute negligence; and in other jurisdictions, while no such specific duty exists, the omission of warnings of approach is to be considered in connection with the duty of the railroad to operate its trains with due care and caution so as to avoid injuries to others. A railroad company is not relieved from the obligation of giving signals of the approach of its trains or cars to crossings by the fact that no statute or ordinance has been adopted or is applicable to the situation and circumstances in question."

Appellant's failure to object to the giving of the instruction, assigned as

error and herein referred to as (3) encounters first, the barrier of Rule 51, F.R.Civ.P., 28 U.S.C.A., which bars right to have it considered for the first time in this court, McDonnell v. Timmerman, 8 Cir., 1959, 269 F.2d 54; Carver v. Tanner, 8 Cir., 1956, 252 F.2d 26; Chicago, Great Western Railway Co. v. Casura, 8 Cir., 1956, 234 F.2d 441, and Arrow Aviation, Inc. v. Moore, 8 Cir., 1959, 266 F.2d 488, and Mill Owners Mut. Fire Ins. Co. v. Kelly, 8 Cir., 1944, 141 F.2d 763, Kansas City Public Service Co. v. Taylor, 8 Cir., 1954, 210 F.2d 3, 5 Moore's Federal Practice § 51.04, pp. 2503–2504 and secondly, a situation, generally such as to render unnecessary application of the rule, referred to in Massachusetts Bonding & Ins. Co. v. Ray Dilschneider, Inc., 8 Cir., 1953, 203 F.2d 556, 560:

"* * * that the contention has such apparent merit otherwise and involves such probable injustice as to prompt a consideration of it on the basis of our own judicial concern and inherent responsibility."

The court's conclusion on that point may be applied here:

"We do not examine therefore what technical merit, if any, the contention might have, if timely and appropriate objection on that basis had been interposed to it in the trial court".

▪ Appellant hypothesizes, that this instruction is within the "apparent merit" exception to Rule 51, F.R.C.P., by its contention that it had no duty to keep a lookout at a "non-user crossing" and that Missouri law does not require a lookout at a "non-used private crossing". No supporting case or authorities are submitted, we have found none and the argument referred to in another part of its brief, as being in point, involving as it did a question of credibility, we have held resolved by the verdicts. Moreover, common law rules of negligence are a part of the case law in Missouri, Hackett v. Wabash Railroad Co., supra, and Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482,

extends that state's "humanitarian doctrine", of negligence, *"at places where there is a duty to keep a proper lookout, to discoverable as well as discovered peril"*. Bryant v. Missouri, Pac. Ry. Co., supra [181 Mo.App. 189, 168 S.W. 230], holds it to apply to a farm crossing since *"as the adjacent owner has a right to use, and must be expected to use, and is not a trespasser in using, the farm crossing which has been put in for his convenience, the railway servants in charge of the engine ought to be required to be on the lookout for him".*, and though the Missouri statute requiring warnings at public crossings does not apply, *"yet there is common law duty to use reasonable care to avoid injury at all crossings, public or private, by warnings or otherwise."* (Italics ours.) Boland v. St. Louis-San Francisco R. R. Co., supra. "The humanitarian rule takes no account of how the danger was created, but confines itself to the question whether a reasonably careful and prudent man, in the situation of the operator of the threatening instrumentality, would have discovered and averted the danger had he exercised reasonable care. Rush v. Metropolitan St. Ry. Co., 137 S.W. 1029, 1031, 157 Mo.App. 504; Gordon v. Postal-Telegraph Cable Co., Mo. [App.], 24 S.W.2d 644, 648." And "the humanitarian rule which may be invoked against railroads or street railroads for injuries to persons on their tracks applies where, regardless of the cause of the perilous condition of the traveler, the railroad's servant in charge of the engine or car, in the proper performance of duty, could have discovered the danger and averted it, but negligently or wantonly failed to perform that humane duty. Shelton v. Metropolitan St. Ry. Co., 151 S.W. 493, 495, 167 Mo. App. 404", 19 Words and Phrases, 1940, p. 740. See also Mattocks v. Emerson Drug Co., Mo.App., 33 S.W.2d 142; Murphy v. Wabash R. Co., 228 Mo. 56, 128 S.W. 481; Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S.W. 2d 673; Cowherd v. Missouri Pac. R. Co., 218 Mo.App. 688, 268 S.W. 107; Shipley

v. Metropolitan St. Ry. Co., 144 Mo.App. 7, 128 S.W. 768; Cincinnati, N. O. & T. P. Ry. Co. v. Wallace's Adm'r, 267 Ky. 661, 103 S.W.2d 91; McCall v. Thompson, 348 Mo. 795, 155 S.W.2d 161; State ex rel. Thompson v. Shain, 349 Mo. 27, 159 S.W.2d 582; Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33; Clifford v. Pitcairn, 345 Mo. 60, 131 S.W.2d 508, and Duckworth v. Dent, 346 Mo. 518, 142 S. W.2d 85.

Affirmed.