## THOMAS E. RUSH, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant. ·

### Kansas City Court of Appeals, May 29, 1911.

1. **NEGLIGENCE: Personal Injury: Collision at Street Railway Crossing: Demurrer to Evidence.** Plaintiff, a passenger for hire, in a public automobile, was struck at a street crossing by a street car operated by defendant. There was no obstacle to prevent the motorman seeing the chauffeur, or the chauffeur from seeing the street car. The chauffeur approached the crossing without altering the speed of his car, then running not over six miles per hour. The motorman was from fifty to sixty feet away from the automobile, running about twenty miles an hour, and testified that he immediately began ringing the bell, threw on the air-brakes, and after the car had run perhaps fifteen feet reversed the current. Plaintiff's evidence was to the effect that the motorman did nothing toward stopping until the instant of the collision. *Held*, that the trial court committed no error in overruling the demurrer to the evidence.

2. ——: **Contributory Negligence: When not Imputed.** Where there is no question of the negligence of the chauffeur in running his passenger into a perilous situation, but where plaintiff, a passenger, had no control over the automobile and was thrown into danger without an opportunity to save himself, or even to object to the conduct of the chauffeur, the negligence of the chauffeur can not be imputed to plaintiff.

3. ——: **Humanitarian Doctrine.** Where the inference is strong that had the motorman done what he says he did, viz., applied the brakes when he first saw the danger, the street car, then from fifty to sixty feet away from the place of collision would have been stopped in that place, or at least its speed would have been so materially reduced that the automobile would have cleared the crossing, and where the evidence of plaintiff tends to show that the motorman did nothing toward stopping until the instant of the collision, the motorman was guilty of a breach of his duty towards plaintiff under the "last chance" rule, and defendant's liability for the consequences of such breach can not be affected in any way by the negligence of the chauffeur, or even by the negligence of plaintiff.

4. **PLEADING: By Agreement without Court Order.** Where plaintiff, by agreement with defendant, amended his petition at the trial by enlarging the statement of the value of plaintiff's lost time, but failed to show that the amendment was made by

order of court, the appellate court, following the mandate of section 1863 R. S. 1909, can not consider such an amendment.

5. ERROR: Remittitur: Value of Lost Time: Verdict in Solido. Where the verdict was *in solido* for $1500, and by agreement with defendant plaintiff had amended his petition at the trial by specially pleading the value of plaintiff's lost time at $1000, although it was error not to limit in the instructions the maximum recovery on that account to the sum stated in the petition, the entire verdict was not infected with error, but only that part of the assessment of damages in excess of $1000. Therefore, the error was not prejudicial, but may be cured by formal remittitur of $500.

.Appeal from Jackson Circuit Court. —*Hon. Jas H. Slover*, Judge.

AFFIRMED CONDITIONALLY.

*John H. Lucas* for appellant.

(1) Appellant contends that this case should be reversed, for the reason that on all the evidence the court should have directed a verdict for defendant. Barnard v. Railroad, 137 Mo. App. 684; Hebeler v. Railroad, 132 Mo. App. 551; Gessner v. Railroad, 137 Mo. App. 47; Gabriel v. Railroad, 130 Mo. App. 651. (2) The court erred in giving instruction No. 1 at plaintiff's request. Cases under Point I. Garard v. Coal Co., 207 Mo. 242; Holden v. Railroad, 108 Mo. App. 1. c. 674; O'Farrell v. Railroad, 136 Mo. App. 353. (3) The court erred in giving instruction No. 4 requested by plaintiff. a. Said instruction enlarges the amounts of recovery authorized by the pleadings and the evidence. Vanbuskirk v. Railroad, 131 Mo. App. 357. b. It assumes as true certain disputed questions of fact. Muncy v. Bevier, 124 Mo. App. 10; Plummer v. Milan, 70 Mo. App. 599; Evans v. Joplin, 76 Mo. App. 21.

*Karnes, New & Krauthoff* and *Arthur Miller* for respondent.

(1) The negligence, if any, of the chauffeur, could not be imputed to the respondent who was simply a passenger. That doctrine has been irrevocably settled in.

this state both by the Supreme Court and the Courts of Appeals. Becke v. Railroad, 102 Mo. 544; Sluder v. Transit Co., 189 Mo. 139 Munger v. City of Sedalia, 66 Mo. App. 630; Profit v. Chicago Ry. Co., 91 Mo. App. 273. And a score of other recent Missouri cases, completely overruling the old doctine of Thorogood v. Bryan, 65 Eng. C. L. 114. (2) The evidence clearly shows that the relation of master and servant did not exist between the chauffeur and the respondent. Little v. Hackett, 116 U. S. 366; Randolph v. O'Riordon, 155 Mass. 331; Railroad v. Stembremmer, 47 N. J. Law, 161; Quarman v. Burnett, M. & W. 439. And the rule applies alike to private, as well as to common carriers of passengers. Fechley v. Traction Co., 119 Mo. App. 366. (3) It must be kept in mind that this is a suit by an innocent third party for the concurring negligence of two tortfeasors, and respondent could have sued either or both. Mencomb v. Railroad, 169 Mo. 422; Bragg v. Railroad, 192 Mo. 331; Hubbard v. Railroad, 173 Mo. 255. But the negligence of the chauffeur in charge of the automobile will not release this appellant from liability for its negligence. Taylor v. Railroad, 137 Mo. 363; O'Rourke v. Lyndall Co., 142 Mo. l. c. 342. (4) When the motorman saw that the chauffeur in charge of the automobile was giving no heed to the danger, but in all reasonable probability was not intending to stop, but intended to drive on to the railroad track, which would have made him necessarily in a perilous situation, the motorman ought to have checked his car, or, if necessary, to have stopped it, and he was not justified in delaying action until it became certain that there would be a collision. The law requires him to exercise ordinary care to prevent accident. Holden v. Railroad 177 Mo. 470; Bunyan v. Railroad, 127 Mo. 21; Hale v. Railroad, 124 Mo. App. 671.

JOHNSON, J.—This is a negligence case. An automobile in which plaintiff was a passenger for hire was struck at a street crossing by an east-bound electric

street car operated by defendant on its Twelfth street line in Kansas City and plaintiff was thrown to the pavement and injured. The petition alleges that "the party operating and managing the automobile in which plaintiff was riding, not knowing of the approach of defendant's car, drove said automobile onto Twelfth street and onto the track of defendant's railway thereon, and while he was driving one of defendant's said cars approached at a rapid speed from the west, and the motorman controlling the same gave no warning of his approach and though he saw, or in the exercise of ordinary care might have seen, the position of danger in which the persons in said automobile were placed in time to have stopped said cars and prevented a collision with said automobile, he made no effort to do so, but negligently and carelessly continued said car at the same high speed until it with great force and violence ran against said automobile, and by reason of said collision the plaintiff, without any fault or negligence on his part, was thrown from said automobile onto the pavement of said streets." Among the special damages alleged in the petition was loss of earnings valued at one thousand dollars.

The answer is a general traverse. A trial in the circuit court resulted in a verdict and judgment for plaintiff in the sum of fifteen hundred dollars and the cause is before us on the appeal of defendant.

The injury occurred late in the afternoon of July 11, 1908, at the intersection of Twelfth and Central streets. Plaintiff is a lawyer practicing his profession in New York City, belongs to Tammany Hall and, together with other members of that organization, attended the Democratic National Convention held in Denver in July, 1908. Realizing that arid wastes were to be traversed, necessary supplies were carried on the journey but on the return trip via Kansas City, no liquid sustenance stronger than mineral water was served after the train emerged from the alkaline stretches of Western Kansas. A stop-over in Kansas City of

two and one-half hours was scheduled and plaintiff and his close companions (seven in all) planned to spend the time going about the city and made careful preparations to present a good appearance. The seven came up town in a street car which they left at Ninth and Main streets and, encountering an automobile of the type known as a public sight-seeing car, they struck a bargain with the chauffeur and, paying the fare demanded, were taken aboard and transported over the city.

Riding in the open air engenders thirst and on their return from "doing" the boulevards, a stop was made at the Baltimore hotel where all alighted, went to the bar and each took one drink. All chose beer as the best thirst-quencher except plaintiff and the chauffeur who stuck to mineral water—a drink that neither cheers nor inebriates. Finding they still had some spare time, a suggestion was offered and adopted that they ride around to Convention Hall and view the place where Mr. Bryan was nominated for the presidency in 1900. It must be confessed that the route followed in reaching the building was devious, but we give little weight to that fact and for the purposes of the demurrer to the evidence, which counsel for defendant contend should have been given, accept as true the testimony of the seven that individually and collectively they were sober, quiet, and well-behaved and were not intoxicated and disorderly as some of defendant's witnesses describe their condition.

No doubt the recollection of the consequences following the stirring scenes enacted in that building in the fateful year of 1900 made them all feel sober, and careful, too. From Convention Hall the automobile turned north on Central street and proceeded towards the crossing under consideration. There is much conflict in the evidence over the character of the automobile and its speed as it neared the crossing. According to witnesses for defendant "not lighter does the swallow skim along the smooth lake's level brim," than did the machine glide

towards its doom, while witnesses for plaintiff spoke disrespectfully of the vehicle and one of the seven called it "an old tub." They say it toiled slowly and painfully along at not to exceed six miles per hour. We shall not say the evidence of plaintiff is unreasonable; to do so would require us not only to repudiate the testimony of apparently credible witnesses, but to speak in terms of too great praise of "sight-seeing" automobiles. From the viewpoint of the demurrer to the evidence we must give full credit to the evidence of plaintiff and discard nothing except that which overtaxes credulity. Consequently, we assume that the automobile was running six miles per hour when it started across the track. A double-truck street car equipped with air brakes and other modern appliances was approaching from the west on the south track. Witnesses differ about the speed of that car but the general opinion is that its speed was twelve miles per hour. Expert evidence introduced by plaintiff states that the street car could have been stopped in twenty-five or thirty feet, while that of defendant is that a stop could not have been made in less than seventy-five feet.

There was no obstacle to prevent the motorman seeing the automobile or the chauffeur from seeing the street car. It is conceded the chauffeur approached the crossing without altering the speed of his car and it appears to us that he depended on the care of the motorman for the safety of his passengers. His confidence was misplaced for, according to the evidence of plaintiff, the street car came on without slackening speed and the motorman did nothing to avert a collision. The street car struck the automobile squarely in the side and pushed it along the track until the car stopped. Just before the collision the motorman sounded the gong and began stopping the car. The collision hurled plaintiff to the pavement and he was severely injured. The witnesses do not agree on the subject of the distance of the street car from the place of the collision at the time the chauffeur

disclosed his intention of crossing ahead of the car and thereby imperiling his passengers, but we are willing to accept as true the statement of the motorman that he was about thirty feet west of the west property line of Central street when he first noticed the automobile and realized the likelihood and danger of the chauffeur attempting to cross ahead of the car. Central street is sixty feet wide, the automobile was running on a line just east of the middle of the street and, therefore, the testimony of the motorman places his car about sixty feet west of the place of collision when he discovered the peril of plaintiff. He states that immediately he began ringing the bell, threw on the air brakes and, after the car had run, perhaps fifteen feet, reversed the current.

We think the trial court committed no error in overruling the demurrer to the evidence. Of the negligence of the chauffeur in running his passengers into a perilous situation, there can be no question, but plaintiff was a passenger of the chauffeur, had no control over the automobile and was thrown into danger without an opportunity to save himself or even to object to the conduct of the chauffeur. The negligence of the chauffeur cannot be imputed to plaintiff and if it could or if it appeared, as it does not, that plaintiff negligently suffered himself to be entrapped, still the evidence very strongly tends to support the contention of plaintiff that the motorman, after he realized the danger or should have realized it, negligently failed to employ the means under his control which, if reasonably used, would have prevented the injury. The inference is strong that had the motorman done what he says he did, viz., applied the brakes when he first saw the danger, the car then from fifty to sixty feet away from the place of collision, would have been stopped in that space, or, at least, its speed would have been so materially reduced that the automobile would have cleared the crossing. The evidence of the plaintiff tends to show that the motorman did nothing towards stopping until the instant of the

collision. If this is so, and the jury were entitled to find that it was so, the motorman was guilty of a breach of his duty towards plaintiff under the "last chance" rule and defendant's liability for the consequences of such breach cannot be affected in any way by the negligence of the chauffeur or even by negligence of plaintiff, himself, that caused or helped to cause the danger. The humanitarian rule takes no account of how the danger was created but confines itself to the inquiry of whether or not a reasonably careful and prudent man in the situation of the operator of the threatening instrumentality would have discovered and averted the danger had he exercised reasonable care. Tested by that rule the motorman stands accused of negligence by the evidence of plaintiff for which defendant should respond in damages.

We find only one error in the instructions given at the request of plaintiff. On the measure of damages the court instructed the jury "to take into consideration the character and extent of his injuries, if any, together with a reasonable loss of time on account of said injuries, not to exceed in value $3000 and his reasonable expenses for medicines and medical attention, if any, not exceeding three hundred dollars, and you may find for him in such sum as in the judgment of the jury will be a reasonable compensation for the damages thus sustained, not to exceed the sum of $10,000, the amount claimed in the petition." Plaintiff's left arm was broken near the wrist, his chin and left knee were severely bruised and abraided and he had other minor bruises and scratches. He was taken to a hospital where surgeons dressed his wounds and in three or four days he returned to his home. His family physician took him in charge and treated him until his recovery. His outlay for doctor, hospital and drug bills amounted to about three hundred dollars, and his evidence tends to show these expenses were reasonable. He states that he "lost the best part of every day for the next two months after the accident"

and that the reasonable value of his lost time was $3000. From his testimony taken as a whole we infer that the aggregate time he was prevented by his injuries from attending to his practice was about three weeks. The point made by defendant is that since the petition states the value of the lost time was $1000, the maximum recovery on that account should have been limited in the instructions to the sum stated in the petition and that it was prejudicial error for the instructions to allow a recovery in excess of the pleaded damage. The rule is too well settled to be a subject of discussion that lost time is a special damage that must be specially pleaded and that the quantum of such damage as pleaded fixes the maximum limit of the liability. Plaintiff does not controvert this rule but endeavors to show in a supplemental abstract that by agreement with defendant he amended the petition at the trial by enlarging the statement of the value of the lost time to $1000. But plaintiff fails to show that the amendment was made by order of court and, following the mandate of the statute, section 1363, Revised Statutes 1909, we cannot consider it (Elliott v. Railway Co., decided at this term, not yet reported). The reason which prompted us to say that defendant had waived the objection in the Elliott case does not exist in the present case and we must hold that the error was not waived.

But must we say it was prejudicial? The verdict was for $1500, and it covered all the elements of plaintiff's damage. Manifestly the jury did not believe plaintiff had been damaged in the sum he claimed in his testimony for lost time and we find a very good reason for such conclusion in the testimony of plaintiff elicited on cross-examination. The lost time occurred in the summer vacation during which law business is at its lowest ebb in New York. Lawyers of the $1000-a-week type, at the beginning of that period, usually turn the office over to the clerks and go to Europe, to Atlantic summer resorts and sometimes, though rarely, penetrate into the

"hinterland." Of course, plaintiff was not entitled to recover anything beyond compensation for actual loss, and it is his misfortune that his lost time occurred in a comparatively unproductive season. We have no means of knowing how much the jury allowed him for this element of his damage. The verdict is *in solido* and, for aught we know, the jury may have given him compensation for no other damage. We cannot look into the minds of the jury and have no right to speculate on how they estimated the damages. The error was prejudicial and it permeates that part of the assessment of damages in excess of $1000. To escape a reversal of the judgment plaintiff offers in his brief to remit $500 from the verdict. Defendant objects to the offer and, relying on our decision in the case of Vanbuskirk v. R. R., 131 Mo. App. 357, contends that the entire verdict is infected with error. It was so held in the VanBuskirk case for reasons stated in the opinion but those reasons are without application here. The most that can be said in favor of the position of defendant is that the entire verdict represents compensation for lost time. If the verdict is reduced by remittitur to the amount claimed in the petition for such damage, how could defendant be injured by the error? We have no right to reverse a judgment except for prejudicial error and error cannot be held prejudicial unless some harm results from it to the defeated party.

On condition that within ten days plaintiff shall enter a formal remittitur of five hundred dollars, the judgment will be affirmed; otherwise it will be reversed and remanded.

*Broaddus, P. J.,* concurs; *Ellison, J.,* concurs in the result.