J. Robert MINOR, Administrator With Will Annexed of the Estate of Nellie Prentice, Deceased, Respondent,

v.

Elizabeth D. LILLARD, Administratrix of the Estate of Nellie Ellison, Deceased, Appellant.

No. 45794.

Supreme Court of Missouri, Division No. 2.

Nov. 12, 1957.

Henderson & Boulware, Shelbina, and Earl L. Veatch, Monticello, for appellant.

Bollow, Crist & Oswald, Shelbina, and J. Andy Zenge, Jr., Canton, for respondent.

STOCKARD, Commissioner.

Mrs. Nellie Prentice, now represented by her administrator, filed a demand in the Probate Court of Lewis County against the estate of Miss Nellie Ellison in the amount of $7,157.60 for services rendered to Miss Ellison during her lifetime. The Probate Court allowed the demand for the full amount, and upon appeal the Circuit Court of Shelby County, upon change of

venue and after trial without a jury, also allowed the demand in the full amount. An appeal to this court resulted in the judgment being reversed and the cause remanded. Minor v. Lillard, Mo.Sup., 289 S.W. 2d 1.

About three weeks before the second trial the parties stipulated that, subject to objections previously raised, either party could use in the second trial the transcript of the testimony taken in the first trial in lieu of calling the witnesses. On June 5, 1956, when the case was called for trial, respondent was permitted, over the objection of appellant, to amend by interlineation parts of the demand so that with the interlineations those parts read as follows: "For services rendered Nellie Ellison for sixty-nine (69) months at ~~Seventy-Five~~ One Hundred Twenty Dollars $8,280.00 ~~Dollars~~ ($75.00) ~~$5,175.00,~~" and "The fair and reasonable value for seven and two-thirds months (7⅔) at ~~Two Hundred Seventy-Five Dollars a month,~~ Three Hundred Seventy-two $2,852.00 ~~$1,925.00.~~" The total of the demand, which included some other items not changed by the amendment, was then amended to read $11,189.60 instead of $7,157.60.

The second trial was before a jury which returned a verdict in the amount of $10,000. The trial court entered judgment for that amount, and incorporated therein the provision that respondent should recover interest at the rate of 6% on $7,-157.60 from May 17, 1954, the date of the original allowance of the demand by the probate court and interest at the rate of 6% on the sum of $10,000 from June 6, 1956, the date of the judgment. It is from this judgment that this appeal is taken.

The first two points relied on by appellant are that the trial court erred in permitting the amendment to the demand, and that after permitting the amendment, it erred in denying her request for a continuance.

Prior to January 1, 1956, all demands against the estate of a deceased person had to be exhibited and presented as provided by Sections 464.030 and 464.040 (now repealed) (all statutory references are to RSMo 1949, V.A.M.S.) within one year, with certain exceptions not here applicable, or "be forever barred." Section 464.020 (now repealed). The demand was to be exhibited by serving a notice on the administrator in writing stating "the amount and nature" of the claim. Section 464.030 (now repealed). It is now provided that claims and notice of actions against an estate shall be filed in the probate court within nine months after the first published notice of letters testamentary or of administration, or they shall be forever barred against the estate. Section 473.360.

We have found no Missouri case expressly ruling the question whether a demand or claim against the estate of a decedent can be amended after the expiration of the nonclaim statute so as to increase the amount thereof. However, it has been held that when the demand as originally filed is not so wholly insufficient as to constitute a nullity it is subject to being amended after the nonclaim statute has run. Siegel v. Ellis, Mo.Sup., 288 S.W.2d 932. Such amendments have been allowed when the effect is to make the same demand more specific (Watkins v. Donnelly, 88 Mo. 322; Corson v. Waller, 104 Mo.App. 621, 78 S.W. 656), to correct the affidavit (Dawson v. Wombles, 104 Mo.App. 272, 78 S.W. 823), to show the real consideration for the alleged obligation (Stanton v. Edman, Mo.App., 28 S.W.2d 425), to show the demand to be against the same person as executrix instead of administratrix (Gewe v. Hanszen, 85 Mo.App. 136), or when the amendment does not change the cause of action (Hunt v. Bouton, 63 Mo. 187; Goddard v. Williamson's Administrator, 72 Mo. 131; Watkins v. Donnelly, 88 Mo. 322; Corson v. Waller, 104 Mo.App. 621, 78 S.W. 656; 2 Limbaugh, Missouri Practice, Probate Courts, § 772). In these cases the test in determining if the amendment could be made has usually been the same as that applied in determining whether an amend-

ment can be made to pleadings after the expiration of the general statute of limitations. However, in each case when the amendment was allowed it did not result in an increase in the amount of the demand.

■ It has always been recognized that there is a distinction between the purpose of the general statutes of limitations and the special nonclaim statutes applicable to the administration of the estates of decedents. 34 C.J.S. Executors and Administrators § 405, p. 180. One of the purposes of the nonclaim statutes is to provide a method whereby at the termination of a reasonable period the real and personal property not needed to meet the obligations of the estate will be free for distribution to the rightful owners without waiting until every claim has been finally adjudicated, which could take several years as it has in this case.

The history of legislation pertaining to the administration of estates of deceased persons in this state indicates an intent to provide a system whereby real and personal property will not be tied up for an extended period of time, and whereby creditors can obtain payment of their claims without undue delay. The amendments from time to time have been directed to shortening the time for administration and to facilitating the payment of claims and the distribution of the property. Prior to 1866 three years was allowed for the presentment of claims. RSMo 1855, § 2. Subsequent to that time the period was two years until 1911 when the time was shortened to one year. 2 Limbaugh, Missouri Practice, Probate Courts, § 760. It is now nine months. Section 473.360.

■ The previous probate code had and the present probate code has provisions which are inconsistent with the idea that a claim against an estate can be increased in amount after the expiration of the nonclaim statute. We shall for the sake of brevity refer only to provisions of the present code. The executor or administrator is entitled to make partial distribution "if it appears that there is sufficient money to pay all claims against the estate." Section 473.613. Although security may be required for the return of the property so distributed, it would be impossible for it ever to appear that there is sufficient money in the estate to pay all claims if the claimants could amend after the expiration of the nonclaim statute so as to increase the amount of the claims. The executor or administrator may also deliver to any distributee possession of any specific real estate or personal property to which he is entitled under the terms of a will or by intestacy "if other distributees and claimants are not prejudiced thereby." Section 473.613. Again, while security for the return of the property may be required, it could never be determined that the interests of claimants would not be prejudiced if after the expiration of the nonclaim statute the amount of the pending claims could be increased. The probate court is to classify the allowed claims into seven classifications, and any claim filed after six months is to be placed in the seventh class. Sections 473.373 and 473.397. The executor or administrator shall pay those claims, as far as he has assets, in the order in which they are classed. Section 473.430. However, Section 473.433 directs that upon the expiration of six months from the date of the first publication of letters and after the adjudication of all claims of classes one through six, or when it appears that there are sufficient assets to pay all of such claims whether or not theretofore allowed, the executor or administrator shall proceed to pay all claims which have been allowed by final judgment. It is then provided that at the end of nine months, and after the adjudication of all claims, or when it appears that there are sufficient assets to pay all claims whether or not theretofore allowed, the executor or administrator shall proceed to pay all claims which have been allowed by final judgment. Security may be required from the creditor only

when payment is made before the expiration of six months. If a claim were subject to amendment after the expiration of the nonclaim statute so as to increase the amount thereof, then the executor or administrator could never determine that there were sufficient assets to pay all claims until each and every claim had been reduced to final judgment. This, of course, would defeat one of the principal objectives of administration which is to provide for the early payment of adjudicated claims when there are sufficient assets.

When we take into consideration the purpose of the administration of the estate of a deceased person, the history of the statutes governing that administration, and the provisions of the probate code for the payment of claims, it is obvious that the Legislature intended that the full amount of the claim should be presented within the time provided by the nonclaim statute.

We have made a careful search of the authorities in other jurisdictions and we find that this is in accord with all the cases we have found which have ruled on this precise point. Winchell v. Sanger, 73 Conn. 399, 47 A. 706, 66 L.R.A. 935; Burns v. Burns, 228 Ala. 61, 152 So. 48; United States Fidelity & Guaranty Co. v. Blanchard, 182 Miss. 179, 181 So. 134; In re Von Nobel's Estate, 239 Wis. 233, 1 N.W.2d 76. In Black v. Walker, 140 Fla. 48, 191 So. 25, and State ex rel. Steinfort v. District Court of Fourth Judicial District in and for Ravalli County, 111 Mont. 216, 107 P.2d 890, amendments to the claim after the expiration of the nonclaim statute were held to be proper because they did not result in a change of the cause of action and because they did not result in an increase in the amount of the claim. In Dubbs v. Haworth, 102 Kan. 603, 171 P. 624, a claim in the amount of $600 was filed against an estate for services rendered. After the expiration of the nonclaim statute the claimant was required to itemize his demand, and in doing so he set out various services which he claimed to be worth $1,087. It was held that he did not have to elect which services he would rely on, and that he could prove any or all that were itemized, but even if he proved all he would be limited in his recovery to $600. See also, Burns v. Burns, 228 Ala. 61, 152 So. 48; Anderson v. Williams, 26 R.I. 64, 58 A. 251; Annotation 76 A.L.R. 1380; and 34 C.J.S. Executors and Administrators § 417(b) (2).

■ Although the trial court improperly permitted respondent to amend the claim after the expiration of the applicable nonclaim statute, and the jury returned a verdict for an amount greater than that of the original claim, it is not necessary for this reason that the judgment be reversed and the case retried. The situation is similar to that when a jury returns a verdict in excess of the amount prayed for, and in such a situation, when the excess is not so great as to indicate prejudice on the part of the jury, the error may be corrected by way of remittitur. Rush v. Metropolitan Street Railway Company, 157 Mo.App. 504, 137 S.W. 1029; Acy v. Inland Security Company, Mo.App., 287 S.W.2d 347.

■ At the time the stipulation was entered into whereby appellant agreed that either party could read to the jury the testimony of witnesses taken at the first trial in lieu of the witnesses being present, appellant had no reason to believe that the demand was not to be in the same amount as that in the first trial. It could well be that she was induced to come unprepared to meet this increased demand which she first learned about after the parties appeared in court on the day set for trial. If it were our conclusion that the amendment could have been made, we would not, under the circumstances of this case, treat lightly appellant's contention that the trial court erred in denying her request for a continuance. However, in view of our holding that the error in permitting the amendment may be corrected by remittitur, and the fact that at the second trial only one witness testified in person on behalf of respondent and he did not testify to the value

of the services, no prejudicial error resulted in denying the continuance.

■ Appellant contends the court erred in permitting that part of the testimony of Dr. P. W. Jennings taken at the first trial to be read to the jury, wherein he answered two hypothetical questions pertaining to the value of the services rendered by Mrs. Prentice, because the witness was not properly qualified and because the question assumed facts not in evidence. An objection to the qualification of the doctor to testify concerning the value of the services was made at the first trial, and when the testimony was read to the jury at the second trial the objection was renewed. The qualification of Dr. Jennings to express an opinion on the value of the services was a matter largely in the discretion of the trial court, Baker v. Brown's Estate, 365 Mo. 1159, 294 S.W.2d 22, and the ruling will not be disturbed unless there is a showing of an abuse of discretion. Boring v. Kansas City Life Insurance Company, Mo. Sup., 274 S.W.2d 233. The doctor testified that he had practiced medicine in the community for 43 years and had treated Miss Ellison; that he had assisted in looking after sick persons and had often obtained help for them; and that he was familiar with the care furnished to Miss Ellison by Mrs. Prentice. We cannot say that under these circumstances the court abused its discretion in ruling that Dr. Jennings was qualified to testify concerning the value of the services of Mrs. Prentice.

■ The transcript does not show that at the first trial an objection was made to the hypothetical questions propounded to Dr. Jennings on the ground that they assumed facts not in evidence. Therefore the parties agreed that the testimony of the doctor could be read to the jury at the second trial subject only to the ruling of the court on the issue of his qualification to testify concerning the value of the services of Mrs. Prentice. In Addition, the objection at this trial was not made until after the doctor had answered one of the questions, and counsel did not point out to the trial court what facts were considered to be improperly assumed by either question. We do not hold that the hypothetical questions improperly assumed facts not in evidence. In fact we think they did not. But if they did, under the circumstances here presented, no prejudicial error resulted.

■ Appellant contends that the trial court erred in refusing to give instructions A and F at her request. Instruction A was to the effect that a recovery for services rendered by Mrs. Prentice more than five years before the date of the death of Miss Ellison was barred by the statute of limitations. In view of the evidence on the part of respondent at this trial that the services were continuous from December 26, 1945, to the date of the death of Miss Ellison on May 16, 1952, the period covered by the demand, this requested instruction was erroneous, and therefore it was properly refused. See the cases cited and the complete discussion of this question in the opinion on the previous appeal of this case. Minor v. Lillard, Mo., 289 S.W.2d 1, 6–7.

■ Instruction F provided, in substance, that if the jury found that the services rendered by Mrs. Prentice to Miss Ellison "were not continuous over the entire period of the claim from December 26, 1945, until May 16, 1952" then recovery for any services rendered prior to May 16, 1947, was barred by the five-year statute of limitations. This is not a correct statement of the law. If the jury found that there was a break in the continuity of the services, respondent was still entitled to recover for the services which were continuous even though some of those continuous services were performed prior to May 16, 1947. Minor v. Lillard, supra; Annotation 7 A.L. R.2d 198. This instruction was properly refused.

■ Appellant's next contention is that the trial court erred in allowing interest at the rate of 6% on $7,157.60 from May 17, 1954, the date the probate court allowed

respondent's demand, to June 6, 1956, the date of the judgment from which this appeal is taken. Respondent's position is that he is entitled to interest on the amount allowed by the probate court from the date of the allowance by reason of Section 408.-040 RSMo 1949, V.A.M.S., which provides that interest at the rate of 6%, except as otherwise provided in situations not here applicable, shall be allowed on all money due upon any judgment or order of any court from the day of rendering the same until satisfaction be made by payment. Respondent's position necessarily presupposes that the judgment of the probate court remained in effect. However, while the circuit court at the first trial did enter judgment for the same amount as approved by the probate court, that judgment was subsequently reversed by this court. Therefore, the only judgment now in existence which respondent could be entitled to enforce and which could bear interest pursuant to Section 408.040 is the one entered on June 6, 1956.

Respondent relies on In re Thomasson's Estate, Mo.Sup., 192 S.W.2d 867. There a judgment was obtained in the circuit court against a decedent's estate for attorney fees which subsequently was affirmed on appeal. It was held that the claimants were entitled to interest on their judgment from the date of its entry in the circuit court by reason of what is now Section 408.040. The facts of the Thomasson case are not applicable to this case. Whatever rights respondent had by reason of the allowance of the demand in the probate court were replaced by the judgment of the circuit court in the first trial, and that judgment was reversed. We know of no authority for interest to be allowed on a judgment retroactive to a time prior to its rendition. Therefore, the trial court erred in allowing interest on a part of the judgment entered on June 6, 1956, retroactive to May 17, 1954.

Appellant also contends that it was "improper for plaintiff in the argument to make statements concerning the failure of the administratrix, as an heir, to take care of the deceased during her lifetime." In the argument portion of the brief appellant sets out some statements by respondent's counsel to the effect that Mrs. Lillard, who with her brother would inherit the estate, lived only 40 miles from Miss Ellison during the latter years of her life and did not do anything to care for her. By turning to the portions of the argument which appellant has included in the transcript we find that the objections were made under the following circumstances. In the principal argument to jury respondent's counsel stated: "Now, what did they [Mr. and Mrs. Lillard] testify to? About all there is in this record that they testified to, was that during all of this time they were living in Hannibal, forty miles from Canton, but there was not a single thing they ever told you they ever did for Nellie Ellison. They never told you they ever inquired about her; they never even heard from her; they never even went to see her or * * *." The objection was, "We object to that as clearly outside the evidence. There is nothing in the evidence to warrant that statement." The evidence does show that Mrs. Lillard lived in Hannibal, and the record does not show that she and her husband did anything to care for Miss Ellison. It was not entirely immaterial that Mrs. Lillard did not provide care for Miss Ellison. She was the nearest relative, and respondent's evidence tended to prove that although Miss Ellison needed care there was no one to whom she could turn but Mrs. Prentice, and that Mrs. Prentice provided the care that was needed. This would have some bearing on the quantity and value of the services rendered by Mrs. Prentice. Therefore the argument up to the time of this objection was not prejudically erroneous for the reason set forth in the objection.

Counsel for respondent then did make the statements which appellant has set out in the argument portion of his brief and which he contends were improper. Counsel also made some comments which were en-

tirely proper and about which there is no challenge or question. After the argument had continued for some time, appellant interposed his second objection as follows: "We are objecting to all that line of argument."

The alleged misconduct of counsel during trial must be called to the attention of the trial court, and the trial court must, by request for instant action and ruling, be given an opportunity to grant relief. Blanford v. St. Louis Public Service Co., Mo.Sup., 266 S.W.2d 718. Here counsel did not point out to what he was objecting except to "all that line of argument." Where all the preceding argument is not erroneous, as was true in this case, this objection will not suffice. The objection made here was no more than saying "I object to that" which was held not to be an adequate objection under similar circumstances. Sollenberger v. Kansas City Public Service Company, 356 Mo. 454, 202 S.W.2d 25.

One further objection was made to the oral argument. In the closing argument respondent's counsel made a comment to the effect that appellant wanted to keep the whole estate. Appellant's general objection was overruled with the comment that "It's in answer to your argument." Appellant's argument is not in the transcript and therefore we cannot determine whether the trial court was in error. Under the circumstances we do not find prejudicial error resulted from the oral argument.

Appellant's next point is as follows: "The trial court erred in refusing to allow defendant's witness, Mary Jolly, to testify as to the value of services based on a hypothetical question. The witness was qualified to answer the questions propounded." No cases are cited. The total argument in the brief on this question is: "We submit that defendant's witness, Mary Jolly, was qualified to answer the hypothetical question propounded to her and that it was error for the court to sustain the objection to her testimony."

When Mrs. Jolly was asked if she had an opinion as to the value of the services enumerated in a hypothetical question, respondent objected because "there has been no qualification shown by this witness." The trial court sustained the objection without comment. In this unsatisfactory state of the record we have read carefully her testimony, and everything that was said in connection therewith, to see if there appears a clear abuse of the trial court's discretion in sustaining the objection. In this situation, as in the presentation by respondent of evidence of the qualifications of Dr. Jennings, there was much to be desired. However, we note that this witness testified that she had done practical nursing only in Hannibal, Missouri. She did not testify that she had done any work in Lewis County or that she was familiar with the compensation paid in Lewis County for services of the type rendered by Mrs. Prentice. Perhaps the trial court had in mind the following statement from Love v. Richardson, Mo.App., 61 S.W.2d 220, at 222, where in ruling on a similar contention it was said: "Defendants claim the court erred in excluding the testimony of Addie Spencer a practical nurse. It was shown that she had done no practical nursing in Pike County, Mo.; her experience being confined to Hannibal, Mo. The trial court, therefore, properly held that she was not qualified to testify in this case as to the value of the services rendered."

The burden was on appellant to show on this appeal that the trial court abused its discretion in sustaining the objection to the qualification of Mrs. Jolly, and we must hold that she has not done so.

Appellant's last point is that the "verdict and judgment is excessive and was not supported by the evidence and the law under the evidence." Following this are two sub-points as follows: "(a) Claimant neither kept nor presented an account for her services during the six years and more that said services are claimed to have been

rendered. The failure in this respect affords some evidence which is adverse to the claim of plaintiff. (b) The witness, as to the value of services rendered, did not base his opinion as to actual value."

At no place in the brief is there a statement of the amount the judgment is considered to be excessive, and, therefore, it does not affirmatively appear that appellant would consider $7,157.60 to be excessive. There was ample evidence to show that Mrs. Prentice did render services and that they were of substantial value. While it is true that Mrs. Prentice did not keep a record of her services, this was a matter to be considered by the jury, as appellant in substance admits. Appellant does not identify the witness referred to in part (b) of her point, but apparently it was Dr. Jennings. The question he answered was so worded to call for the "reasonable value" of the services, and that was proper. Under the circumstances we cannot say that a judgment in the amount of $7,157.60, which is the maximum amount we will permit to stand, would be excessive.

If respondent will within fifteen days enter in this court a remittitur in the amount of $2,842.40 and of all interest on the judgment prior to June 6, 1956, a judgment in the amount of $7,157.60 with interest from June 6, 1956, will stand affirmed; otherwise the judgment is reversed and the cause is remanded for new trial.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.